# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00505-CR

**Rex Allen Stockton, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. D-1-DC-12-204926, HONORABLE MIKE DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Rex Allen Stockton guilty of assault with family violence, and the trial court assessed a punishment of three years in prison. *See* Tex. Penal Code § 22.01(b)(2)(A). Appellant contends he was denied his right to a speedy trial, that his attorney provided ineffective assistance by failing to obtain a hearing on his pro se motions for release because of delay and for speedy trial, that his Fourth Amendment rights were violated by the denial of his request for personal bond, and that the trial court erred by allowing a police officer to read from the victim's statement. We will affirm the judgment.

## BACKGROUND

On September 19, 2012, appellant's wife called 911 complaining that appellant had assaulted her. She asserted that she was packing to leave their home. She said that they argued and that appellant hit her with a half-full beer can and punched her in the arm. One of the deputy sheriffs

who responded testified that he noticed a red mark where appellant's wife said appellant hit her, and he took photographs that were shown to the jury. At trial, appellant admitted arguing with his wife but denied throwing a beer can at or touching her that night. Although he had previously been convicted of assaulting his wife, he asserted that he was innocent of those assaults but had pleaded guilty to end those cases without a trial. He admitted that, while under a protective order limiting his contact with his wife before trial, he wrote her several letters and called her 887 times over ten months, once 30 times in a day.

## DISCUSSION

**Appellant's right to a speedy-trial was not violated.**

Before addressing the merits of appellant's speedy-trial complaint, we note that the issue was not properly preserved. The trial court never expressly ruled on appellant's motion—in part, possibly, because he filed it pro se while represented by counsel. *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) ("a defendant has no right to hybrid representation . . . [and] a trial court is free to disregard any pro se motions presented by a defendant who is represented by counsel"). The issue was not preserved by a proper motion or a trial-court ruling. *See* Tex. R. App. P. 33.1(a).

Even if the issue were properly preserved, the asserted delay in appellant's trial did not reach the threshold generally considered "presumptively prejudicial." *See Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992); *see also Cantu v. State*, 253 S.W.3d 273, 280-81 (Tex. Crim. App. 2008). There is no set time period that triggers the analysis, *Cantu*, 253 S.W.3d at 281, but a delay approaching a year is considered enough to trigger it. *Doggett*, 505 U.S. at 652, n.1; *Dragoo*

*v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). Appellant was convicted slightly less than ten months after he was arrested, and slightly less than eight months after he was indicted. We are not persuaded that this time period is significant enough to be presumptively prejudicial.

Because there is no set time period defining when a trial must occur, however, we will apply the four-factor test for alleged violations of the right to a speedy trial that assesses (1) the length of the delay, (2) the reason for the delay, (3) whether and how the defendant asserted his right to a speedy trial, and (4) whether the defendant suffered prejudice as a result of the delay. *Cantu*, 253 S.W.3d at 280-81; *see also Barker v. Wingo*, 407 U.S. 514, 530 (1972). "While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu*, 253 S.W.3d at 280 (footnotes omitted). We weigh the strength of each factor and then balance the factors in light of relevant circumstances, including the conduct of all parties. *Id*. We will dismiss the charging instrument with prejudice only upon finding that the defendant's actual and asserted interest in a speedy trial has been infringed. *Id*. at 281.

Because there was no hearing on the speedy-trial motion, the record is sparse. Here are some events drawn from the clerk's record:

| | |
|---|---|
| September 19, 2012 | appellant arrested for assault and jailed |
| November 20, 2012 | appellant indicted |
| November 27, 2012 | notice of indictment sent |
| March 1, 2013 | appellant's attorney files motion for discovery |
| March 29, 2013 | appellant files pro se motion for release because of delay |
| | appellant's mother sends letter to trial court complaining that appellant has been in jail without going to court |

3

| April 3, 2013 | appellant files pro se motion for speedy trial |
| April 17, 2013 | appellant files motion to remove counsel |
| April 29, 2013 | appellant is arraigned with new appointed counsel |
| May 28, 2013 | appellant is released on bond |
| July 10, 2013 | court orders appellant arrested |
| July 15-18, 2013 | trial |

Appellant's main complaint focuses on his first seven months of incarceration. The State does not offer any explanation for the period of apparent inactivity in the case, but there is no indication that the State engaged in delay tactics.

Most critically, however, appellant made no showing of how he was prejudiced by the "delay." The speedy-trial protection is intended to (1) prevent oppressive pretrial incarceration, (2) minimize the accused's anxiety, and (3) limit the possibility that the accused's defense will be impaired. *Cantu*, 253 S.W.3d at 285. Of these types of prejudice, the last is potentially the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. Appellant made general complaints about the length of his incarceration and anxiety, but nothing specific. His wife testified that he had lost his job before he assaulted her, so the job loss was not a result of any delay. Appellant complains that he was unable to help his counsel get witnesses, but he did not demonstrate how those witnesses would have testified or helped his defense.

We conclude that the record does not show that appellant preserved his complaint or that his speedy-trial complaint was meritorious.

4

**Appellant did not receive ineffective assistance of counsel**.

Appellant contends that his first appointed counsel provided ineffective assistance because she did not obtain a hearing on either his motion for release because of delay or his motion for speedy trial. He also complains that she failed to investigate enough, to have a face-to-face discussion of trial strategy with him, and to keep him informed.

To demonstrate ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). An accused is not entitled to entirely errorless representation, and we look to the totality of the representation in gauging the adequacy of counsel's performance. *Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013). But even a single instance of counsel's error can rise to the level of deficient performance "if the error was egregious and had a seriously deleterious impact on the balance of the representation." *Id*. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Mallett*, 65 S.W.3d at 63.

Appellant has not explained how the complained-of actions or inactions of counsel hindered preparation of his defense, much less demonstrated how the record shows that if not

5

for these deficiencies the result of the trial would have been different. He has not shown himself entitled to reversal based on ineffective assistance of counsel. *Cf. Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012).

**Any delay in setting appellant's pretrial bond is not grounds for reversal on appeal.**

Appellant complains that the failure of the trial court to consider setting a personal bond for more than eight months violated his Fourth Amendment right to unlawful detention. We need not address the merits of appellant's issue because his conviction rendered complaints about his pretrial detention moot. *See Danziger v. State*, 786 S.W.2d 723, 724 (Tex. Crim. App. 1990).

**Appellant has not demonstrated reversible error in the reading of the victim's statement.**

Appellant complains that the trial court erred by allowing a sheriff's deputy to read aloud from the questionnaire portion of the assault victim's statement in front of the jury. Appellant objected that having the deputy read produced hearsay and on appeal complains specifically that it was not admissible under the hearsay exception for public records. *See* Tex. R. Evid. 803(8). We review a trial court's determination of whether evidence is admissible under an exception to the hearsay rule for an abuse of discretion. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g).

The disputed evidence was admitted during the testimony of the deputy, who testified after appellant's wife. When cross-examining appellant's wife, the defense challenged her credibility by exploring her complaints to police within two weeks of this incident that did not result

6

in appellant's arrest.[1]  When the prosecutor later asked the deputy sheriff about appellant's wife's responses to the questionnaire portion of her assault victim's statement, appellant objected that the answers would be hearsay.  The State argued that the questionnaire responses were admissible to show "the dynamic and the power and control that led her to be what I think defense is describing to be paranoid behavior."

It is not clear that appellant preserved this issue.  *See* Tex. R. App. P. 33.1(a).  In a bench conference, appellant objected to the evidence, but the trial court never expressly overruled his objection.  Appellant's counsel stated at the close of the discussion with the court, "So subject to her being recalled then I guess," indicating that he was withdrawing his hearsay objection if he could recall appellant's wife to the stand.  The trial court permitted the reading, and appellant's counsel did not reassert his objection to the questions.

Even if the admission of this evidence was erroneous and preserved for our review, appellant has not shown that it affected his substantial rights.  *See* Tex. R. App. P. 44.2(b).  The disputed testimony is the deputy's statement that he asked, "Has she or he ever tried to choke you, and she answered yes. . . . 'Has she or he ever forced you to have sex on you when you did not wish to do so,' she answered yes. . . . 'Does she or he follow or spy on you or leave threatening messages,' she answered yes."  This evidence was essentially cumulative of other evidence regarding appellant's prior convictions for assaulting his wife (before and after their marriage), as well as her testimony

---

[1]  For example, appellant's wife previously complained to a law enforcement officer that appellant had hit her face with his head, somehow piercing her with a needle in the process. Emergency responders did not find a puncture mark on her.

7

that his abuse never stopped and that he threatened to kill her.  As such, its admission was harmless.

*See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999).

## CONCLUSION

We affirm the judgment.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   August 28, 2014

Do Not Publish